### BURTON v. ROSS. (No. 8294.)

(Court of Civil Appeals of Texas. Galveston. Jan. 25, 1923. Rehearing Granted March 17, 1923. Rehearing Denied April 12, 1923.)

On Motion for Rehearing.

**1. Work and labor $\Longleftrightarrow$22—Pleading held to state cause of action.**

A petition, alleging that defendant agreed that, if plaintiff would go upon land and run a dairy business and cultivate the land, he would furnish cows and other things which would belong to plaintiff and could be paid for out of plaintiff's share of crops and income from the cows, but that defendant failed to furnish the cows and rendered it impossible for plaintiff to run the farm, after he had prepared the ground for crops, *held* to state a cause of action for the reasonable value of his time and labor.

**2. Work and labor $\Longleftrightarrow$14(2)—Plaintiff held entitled to recover on quantum meruit for services rendered.**

Where landowner agreed to furnish cows and other things if plaintiff would go upon the land and raise crops, the cows and other things

furnished to belong to plaintiff and to be paid for out of the income of the farm, plaintiff was entitled to recover on quantum meruit for time and labor spent in preparing the land for crops, where the landowner first breached the contract by refusing to provide the cows, and thus compelled plaintiff to abandon the farm.

Error from District Court, Harris County; W. E. Monteith, Judge.

Action by Lonnie B. Burton against J. O. Ross. Judgment for defendant, and the plaintiff brings error. Reversed and remanded.

A. C. Allen, of Houston, for plaintiff in error.

J. B. Ross and A. R. & W. P. Hamblen, all of Houston, for defendant in error.

GRAVES, J. Plaintiff in error sued the defendant in error for damages for breach of contract to furnish certain cows for use in connection with 2,000 acres of the latter's land near Genoa, Tex., and for an alleged balance of $156.32 in money claimed to be due plaintiff on an account between them, stating his cause of action with reference to the cows as follows:

"Defendant agreed if plaintiff would go to said land and run a dairy business and with said other two men cultivate as much of said land as they reasonably could, that he (defendant) would furnish plaintiff six milch cows of the reasonable market value of $100 each, and one pair of mules, and furnish enough funds for plaintiff to have some hogs, agreeing that plaintiff was to be the owner of said cows, mules, hogs and some tools, that defendant would permit plaintiff to pay for those things out of the earnings of said farming and dairy business, to which plaintiff assented. And it was agreed so much of said land as would be put in would be rented by defendant on the shares, on what is known as the third and fourth, meaning that as rent for the land defendant was to have one-third of the grain and foodstuff and one-fourth of the cotton grown, and said other two men were to cultivate the land also on said terms.

"That plaintiff, replying on said contract with defendant and the promises of the latter thereunder, moved on said land. Defendant furnished plaintiff one pair of mules at the price of $350, and one sow at the price of $30, and tools at the price of $33.33, making in all $413.33 for which defendant took the written obligation of plaintiff with mortgage to secure said money. That in the taking of said obligation or obligations for said stock and tools so sold defendant, the same were made payable on demand, but in truth and in fact they were not payable except out of the earnings of said dairy and farming business.

"That the furnishing said cows to plaintiff by defendant was the principal feature of said contract, and was so understood and agreed to be the main feature by both plaintiff and defendant, because as plaintiff had not the means to go ahead and farm and meet current expenses, it was known that with the proceeds of the milk that plaintiff could not only meet the expenses necessary in the farming to be done, but would enable him to accumulate a fund that at the end of the year would enable plaintiff to pay defendant the $600 for the cows as well as his other obligations given for the mules, hog and tools. That cows of the value of $100 each would afford three gallons of milk per day, and said milk was of the reasonable value of 40 cents per gallon, and plaintiff could have obtained this and was offered this by a responsible party.

"That relying on said contract and believing defendant would carry out his part of same, plaintiff went to work breaking the land, etc. That at the time of making said contract plaintiff did not want to put it in cotton at all, but on the insistence of defendant agreed to, and with said two men planted 21 acres in cotton and put in some other acres of other foodstuff and had about 60 acres broken up and planted, as defendant failed to furnish the cows to plaintiff from the income of which both plaintiff and defendant agreed and expected that the expenses of running the place and making the crop would be paid, as well as to accumulate funds with which plaintiff was to pay defendant for said cows.

"That plaintiff, at the time he moved on said land believing said cows would be furnished, went vigorously to work to prepare the ground and do all necessary to make a crop and to break up and prepare plenty of land on which to grow foodstuff for the cows defendant was to furnish him and worked with hope and encouragement, daily expecting said cows to be furnished him as contracted by defendant, but as time passed and no cows were furnished plaintiff, and as expenses were running on and increasing, and plaintiff not having funds, as defendant knew, with which to meet them, and the cows having been demanded of defendant by plaintiff and still not furnished, and as ruination and inability to go further with the business became apparent to plaintiff, he about May 16th went to see defendant and demanded that said cows be furnished him in order that he could go on with said business, when defendant flatly refused to furnish said cows and told plaintiff he was not going to furnish them, whereupon plaintiff notified defendant he would not and could not go further with the business on account of defendant breaching his said contract and not furnishing said cows, the main feature of the contract, and thereafter about May 20, 1920, plaintiff for the reason stated was forced to give up said business and move away, which he did.

"Plaintiff shows that said cows could have been obtained at $100 each, and that from the date said contract was made, January 20, 1920, till February 10, 1920, would have been a reasonable time in which defendant could have furnished said cows, as same could have easily been obtained in that time, and defendant not having furnished said cows, and plaintiff helpless and unable to go ahead and make the year out and get the profits he could and would have gotten had defendant furnished said cows, shows that he had expended four months' time and labor, from January 20, 1920, to May 20, 1920, in and about the preparation of the land for a crop and in and about planting what has been planted, and that his time is and was reasonably worth $100 per month, making $400 the value of his time and labor.

"That milch cows·of the value of $100 each average about 3· gallons of milk per day, making 18 gallons per day from the six cows, and said milk being of the reasonable value of 40 cents per gallon makes $7.20 per day, the yield from said cows, and as the feed for said cows was of the reasonable value and would have been $2 per day, leaving $5 net per day that would have been the return from the milk, and at 30 days to the month equals $150 per month net.

"That said contract as stated was for one year and as up till February 10, 1920, would have been a reasonable time in which plaintiff would and should have furnished said cows, makes till December 31, 1920, the end of the time covered by said contract, 10 months and 20 days at $150 per month, the sum of $1,600 damage to plaintiff because of said cows not being furnished."

The defendant in error, in answering by way of cross-action, set up an account for material, equipment, and supplies claimed by him to have been furnished plaintiff in error for prosecution of the enterprise on the land, and the latter in turn pleaded in set-off certain items which he averred left the difference in the accounts of $156.32 in his favor.

Defendant in error offered no testimony on his cross-action nor otherwise, and under the plaintiff in error's proof, the court peremptorily instructed the jury to return a verdict for defendant in error as to plaintiff's cause of action and against the defendant in error as to his cross-action, which was done, and judgment accordingly followed.

After carefully examining the statement of facts, we conclude that the state of the evidence justified the trial court's action. Without attempting to review it in detail, we think that, while the proof was probably sufficient to raise the issue as to whether there was a contract to furnish the cows, as charged, there was a complete failure to show any resulting damage to the plaintiff in error, thus leaving no issue of fact touching these matters to go to the jury; plaintiff in error only remained on the farm four months, abandoning it in May after having gone down there on January 15th of the same year, for a salaried employment in town at $125 per month, which he was still getting at the time of the trial, and which was not shown to be less than he would have made had the cows been furnished and given the mount of milk he claimed they would have; there was no proof as to what would have been the market value of the milk at the farm, none as to the cost of producing, transporting, or selling it, and hence none as to what would have been the net profit made out of it. In this state of the evidence, it did not appear that plaintiff in error suffered any actual damage by reason of not being provided with the cows.

As concerns the balance of accounts claimed by him as being in his favor; his proof was equally insufficient. The main process by which he deduced the claimed amount of $156.32, as being due him over and above what he owed Ross, was by denying in his pleadings liability for the $340 he had agreed by note and mortgage to pay for the mules, wagon, and harness Ross had bought and turned over to him, treating them as his own for the balance of the contract year after he left the farm, and claiming himself entitled to their rental value for that period, which he averred was $364. But under the facts developed, he was not entitled to any such rental value; as already indicated, he only remained on the farm for one-third the time he had agreed to, breaching his contract by going to work in town, and in doing so, left the mules, wagon, and harness on defendant in error's hands without having paid for them. In fact, he had not paid for anything the latter furnished him, nor made any crop. and his associate Roberts testified that all defendant in error got out of the venture, although he had admittedly furnished everything alleged to be due from him except the cows, was his own mules, wagon, and harness that plaintiff in error had so failed to pay for. He could not in such circumstances repudiate his contractual obligations to work the farm, leave the property he had agreed to purchase from his landlord unpaid for on the latter's hands and then receive from him its rental value for the remainder of the contract period.

From what has been said it is apparent that in our opinion the trial court committed no error in giving the peremptory instruction. All assignments have accordingly been overruled, and the judgment ordered affirmed.

Affirmed.

### On Motion for Rehearing.

After carefully re-examining the record herein in response to the motion of plaintiff in error for rehearing, we conclude that we formerly overlooked one element of damage plaintiff in error intended to declare upon as a result of the alleged failure of defendant in error to furnish him six cows; that is, the value of his work and services on the place for the four months he was down there. The cause was determined here on the idea that he only alleged two elements of damage: What he would have made out of the milk, and the rental value of the wagon and mules for the balance remaining of the contract year after he left the farm. As no case was made on either of these counts, the appeal was decided adversely to him.

[1] Now, however, giving his much involved petition the benefit of every reasonable intendment, we think it also charged liability to him for the reasonable value of

his time and labor for the four months' period, and that the evidence likewise raised an issue touching that matter. This being one of the averred consequences of the claimed failure to furnish the cows, and, as we originally concluded, the evidence being sufficient to further raise a question for the jury as to whether a contract to furnish' them was made, it follows that the trial court's action in giving the peremptory instruction against plaintiff in error .deprived him of his right to have the jury pass upon this feature of the case.

[2] In these circumstances, if Ross first breached the contract between them by a refusal to provide the cows he had agreed to, Burton's leaving would then not have amounted to an abandonment, as the right would thereby have accrued to him to quit the place and sue upon quantum meruit for the time and labor he had expended while there.

The motion will be granted, our former judgment of affirmance will be set aside, the trial court's judgment will be reversed, and the cause remanded for another trial.

Motion for rehearing granted.